No. 59,439[1]

PATRONS MUTUAL INSURANCE ASSOCIATION, *Plaintiff/Appellant/Cross-Appellee*, v. RONALD DEAN HARMON, *Defendant/Appellee/Cross-Appellant*, v. LINDA JO KERL, As Guardian and Next Friend of DAN C. HARMON, a Minor, *Intervenor/Appellee/Cross-Appellant*.

(732 P.2d 741)

Opinion filed February 20, 1987.

*Allen R. Slater*, of Dietrich, Davis, Dicus, Rowlands, Schmitt and Gorman, of Olathe, argued the cause, and *John A. Vering, III*, of Kansas City, Missouri, was with him on the briefs for plaintiff/appellant/cross-appellee.

*Dan L. Wulz*, of Bryan, Lykins, Hejtmanek, Hulsey and Wulz, P.A., of Topeka, argued the cause, and *Paul H. Hulsey*, of the same firm, was with him on the brief for intervenor/appellee/cross-appellant.

*Pedro L. Irigonegaray*, of Irigonegaray, Eye & Florez, of Topeka, adopted the intervenor's brief for defendant/appellee/cross-appellant.

The opinion of the court was delivered by

LOCKETT, J.: This is an appeal of a declaratory judgment action in which Patrons Mutual Insurance Association (Patrons) sought to determine if an exclusion in its homeowners insurance policy for bodily injury to an insured applies to the wrongful death claim made by a minor son against his father, who caused the death of the mother. All were insured under the terms of the policy. The district court found that under the homeowner's policy the son had a valid claim against his father for the wrongful death of the mother. The insurer appeals.

Three separate actions are involved in this appeal: (1) a criminal action, (2) a wrongful death action, and (3) this declaratory judgment action.

[1] REPORTER'S NOTE: This case was argued by the parties and decided in conference by the Supreme Court prior to the retirement of Chief Justice Schroeder and the appointment of Justice Allegrucci.

In June of 1983, Patrons issued a homeowners insurance policy to Ronald D. Harmon and Karen E. Harmon, husband and wife. Dan Harmon, the minor son of Ron and Karen, was also insured under the policy.

On September 26, 1983, Ron and Karen returned home from a party at which Ron had been drinking and Karen had allegedly been fraternizing with another man. Ron entered the bedroom, took a pistol off a shelf, and turned toward the bedroom door. The gun fired and the bullet struck Karen in the head. Karen died as a result of the shooting.

On September 27, 1983, Ron was charged with first-degree murder. Ron Harmon contended that the shooting was accidental.

On December 29, 1983, while Ron Harmon's criminal trial was pending, the son filed a wrongful death action against his father for loss of support and companionship, and for mental anguish caused by the death of his mother. Dan claimed that his father had negligently shot and killed his mother.

On January 14, 1984, the jury found Harmon guilty of voluntary manslaughter. To reach this verdict, the jury was required to find that Ron Harmon had intentionally caused the death of his wife. Harmon did not appeal the conviction.

On April 20, 1984, Patrons was notified by Harmon's attorney that the wrongful death action had been filed and Patrons was requested to defend Harmon. Patrons investigated the facts and on May 10, 1984, notified Ron's attorney that Patrons was declining to defend its insured, Ron Harmon.

On May 14, 1984, Patrons filed this declaratory judgment action to determine if there was liability coverage under its policy. Patrons denied coverage under the homeowner's policy on three grounds:

1. Liability was excluded for bodily injury to an insured, Karen Harmon.
2. Ronald Harmon, by virtue of being convicted of voluntary manslaughter, had been proven to have intentionally shot and killed his wife.
3. Harmon had failed to timely report the filing of the lawsuit as required by the homeowner's policy.

Patrons also claimed that the son's negligence action against his

father was barred by the intrafamily immunity doctrine recognized in *Nocktonick v. Nocktonick,* 227 Kan. 758, 611 P.2d 135 (1980).

Patrons later filed a motion for summary judgment. Prior to the hearing on Patrons' motion, the wrongful death action that Patrons had refused to defend proceeded to jury trial before the same judge who had presided at Harmon's criminal trial. The trial judge found from the evidence presented that, as a matter of law, Ron Harmon had negligently shot and killed his wife. The judge then submitted the question of damages to the jury. On August 10, 1984, the jury awarded Linda Jo Kerl, as guardian and next friend of Dan C. Harmon, $125,000 and costs. No appeal was taken.

On September 12, 1984, Kerl, as guardian and next friend of Dan, intervened in this action. The judge overruled Patrons' motion for summary judgment, finding that there was a factual dispute as to whether Ron Harmon accidentally or intentionally injured his wife. The judge did not determine if the policy excluded coverage for bodily injury to an insured. Patrons filed a motion asking the court to reconsider this issue. Later, in December, the judge ruled that all three Harmons were insureds under the policy and the son was not claiming damages for bodily injury (K.S.A. 60-1801), which are excluded under the policy, but damages "for his losses as an heir" (K.S.A. 60-1901). In addition, the court held that the policy clauses excluding coverage for bodily injury to any insured and excluding coverage for intentional or expected acts were ambiguous as a matter of law. The judge denied Patrons' motion for summary judgment, finding that the insurance policy covered the damages sustained by Dan C. Harmon and awarding the son $125,000 in damages. Patrons appealed. The defendant and the intervenor cross-appealed. Ron Harmon claimed that Patrons had failed to defend him as required by its policy.

Patrons is not bound to defend an insured in actions brought wholly outside any coverage obligations assumed in the policy or when the insurer would have no liability if the plaintiff secured a judgment against the insured. Where there is no coverage, there is no duty to defend. *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.,* 212 Kan. 681, 684, 512 P.2d 403 (1973).

Patrons must look beyond the effect of the pleadings and consider any facts brought to its attention or any facts which it could reasonably discover when determining whether it has a duty to defend. If those facts give rise to a "potential of liability" under the policy, Patrons has a duty to defend. *Gray v. Zurich Insurance Co.*, 65 Cal. 2d 263, 54 Cal. Rptr. 104, 419 P.2d 168 (1966). The possibility of coverage may be remote, but if it exists the company owes the insured a defense. The possibility of coverage must be determined by a good faith analysis of all information known to the insured or all information reasonably ascertainable by inquiry and investigation. If ambiguities in coverage, including exclusionary clauses, are judicially determined against the insurer, the ultimate result controls the insurer's duty to defend. *Spruill Motors, Inc.*, 212 Kan. 681, 686.

In *Spruill,* the insured, an employer, was sued for damages deliberately inflicted by its employees. The insurance company refused to defend Spruill, because the petition alleged acts outside the coverage of Spruill's liability insurance policy. The insurance company investigated and withdrew from Spruill's defense after determining there was no coverage for intentional acts. Judgment was entered against Spruill. Spruill then sued its insurer for reimbursement for the judgment and attorney fees awarded. This court found that the insurer had information which showed a probability that its policy covered some of the injuries; therefore, there was actual coverage and the insurer was liable.

Patrons, after investigating the facts, determined that there was no coverage and refused to provide Ron Harmon a defense in the son's wrongful death action. Patrons then filed this declaratory judgment action to determine if there was coverage under its policy. The judge ruled that in the wrongful death action it had been determined that Ron Harmon had accidentally caused the death of his wife. A valid judgment had been entered against Ron Harmon in the wrongful death action. As an insurer, Patrons was privy to Ron Harmon, its insured. Because of the mutuality rule of collateral estoppel, Patrons was bound by that prior finding in this action.

The mutuality rule provides that a person who is a party or privy to a party to an action in which a valid judgment other than

a judgment in rem is rendered is bound by or entitled to claim the benefits of an adjudication upon any matter decided in the action. Three questions must be asked in considering whether mutuality applies: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the claim is asserted a party or in privity with a party to the prior adjudication? *McDermott v. Kansas Public Serv. Co.*, 238 Kan. 462, 712 P.2d 1199 (1986).

Patrons candidly requests this court to create an exception to the mutuality requirement of collateral estoppel for insurance companies. Because Patrons was in privity with a party, Ron Harmon, in the wrongful death action, it was bound by that judgment. An exception to the rule would allow Patrons, the insurer, to refuse to defend its insured in the original action and, if the insured lost, would allow the insurer to relitigate the same issue against its insured in a subsequent action.

We are not inclined to create a special exception to the mutuality requirement of collateral estoppel for insurance companies.

Patrons next requests that we allow the jury's finding of guilt to the voluntary manslaughter charge be admitted into evidence in the subsequent declaratory judgment action. Patrons claims that where an insured is convicted of an intentional crime, that finding of guilt should be determinative in a subsequent civil action and negate any claim by the insured that the injury was an accident or caused by a negligent act. This is contrary to our present law.

Under the Kansas evidentiary rules, any evidence having a reasonable tendency to establish a material fact is relevant and may be admitted in evidence. A plea of guilty to a charge is an admission of an act which was the basis for that charge. When relevant, the plea of guilty to that charge may be admitted into evidence in a subsequent civil action as an admission of the act charged. K.S.A. 60-401 *et seq.*; K.S.A. 1986 Supp. 60-460(g); *Scogin v. Nugen*, 204 Kan. 568, 464 P.2d 166 (1970).

A plea of nolo contendere or a finding of guilt in a criminal action is not an admission of the act charged and is limited to the case where the plea of nolo contendere or the finding of guilt is entered and cannot, therefore, be used as evidence as an admis-

sion in a subsequent civil case. *Federal Deposit Ins. Corp. v. Cloonan,* 165 Kan. 68, 193 P.2d 656 (1948). We are not inclined to enlarge the statutory rule of evidence as Patrons requests.

Patrons correctly claims that it could not have represented Ron Harmon in the wrongful death action because its interests were adverse to those of Harmon. In that action, the insured wanted to prove either that he was not liable for the death or that he was, at most, negligent. It would be an economic benefit for the insurer to prove that the insured, if liable, had committed an intentional act and, therefore, coverage for the insured was excluded under the terms of its policy. Under such circumstances, we agree the interest of the insured and the insurer are adverse. Patrons could not represent both interests.

Patrons claims that, because of its adverse interest to the insured, its course of action was to file this declaratory judgment action to determine the issue of coverage and its obligation to defend the insured. Other courts have held that in similar situations the insurer is not estopped from relitigating the issue of intent. For example, see *Farmers Ins. Co. of Arizona v. Vagnozzi,* 138 Ariz. 443, 675 P.2d 703 (1983); *Fireman's Fund Ins. Co. v. Rairigh,* 59 Md. App. 305, 475 A.2d 509 (1984); and *Kelly v. Cherokee Ins. Co.,* 574 S.W.2d 735 (Tenn. 1978).

In *Bell v. Tilton,* 234 Kan. 461, 674 P.2d 468 (1983), there was a conflict of interest between the insured and the insurer in a civil action. The insurance company hired independent counsel to defend the insured in the civil action and notified the insured that it was reserving all rights under the policy. This procedure protects both the insured's and the insurer's interests and rights and eliminates the necessity of multiple suits to determine the same issues. We believe this is the proper procedure to protect the rights of both parties under their contract.

Patrons contends that the trial court erred in finding that the household exclusion did not prevent Dan Harmon from recovering under the policy. The trial court, in considering the household exclusion, made two rulings:

1. Dan Harmon was not making a claim for his "bodily injuries" or the "bodily injuries" to "any insured" and, therefore, the household exclusion did not apply and;
2. in the trial court's opinion, the household exclusion clause and coverage clause were ambiguous.

Regardless of the construction of the written contract made by the trial court, on appeal a contract may be construed and its legal effect determined by the appellate court. *Cornwell v. Jespersen*, 238 Kan. 110, 708 P.2d 515 (1985).

To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning. *Clark v. Prudential Ins. Co.*, 204 Kan. 487, 491, 464 P.2d 253 (1970).

The language of a policy of insurance, like any other contract, must, if possible, be construed in such manner as to give effect to the intention of the parties. Where the terms of a policy of insurance are ambiguous or uncertain, conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail. Since the insurer prepares its own contracts, it has a duty to make the meaning clear. If the insurer intends to restrict or limit coverage provided in the policy, it must use clear and unambiguous language in doing so; otherwise, the policy will be liberally construed in favor of the insured. When an insurance contract is not ambiguous, the court may not make another contract for the parties. Its function is to enforce the contract as made. *Goforth v. Franklin Life Ins. Co.*, 202 Kan. 413, 417, 449 P.2d 477 (1969).

The Harmons' insurance policy contained the following liability provisions:

"Section II - Liability Coverages - Coverage E Personal Liability.

"If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage to which this coverage applies, we will:

"a. pay up to our limit of liability for the damages for which the insured is legally liable; and

"b. provide a defense at our expense by counsel of our choice. . . ."

"Section II - Exclusions.

"1. Coverage E - Personal Liability and Coverage F - Medical Payments to others do not apply to bodily injury or property damage:

"a. which is expected or intended by the insured;

"...

"f. bodily injury to you and any insured within the meaning of part a. and b. of Definition 3, insured."

Patrons contends that Dan Harmon's action is for his mother's bodily injury which was caused by the intentional act of his father. Dan Harmon contends that his action is for damages due to the wrongful death of his mother which resulted from the bodily injury accidentally caused by his father, *i.e.*, wrongful death. K.S.A. 60-1901 *et seq.*

The policy defines "bodily injury" to mean "bodily harm, sickness or disease including required care, loss of services and death resulting therefrom." Patrons argues that Dan Harmon's wrongful death damages are the types of damages included within the policy definition for bodily injury. K.S.A. 60-1901 *et seq.* provides damages for mental anguish; suffering; bereavement; loss of society, companionship, comfort or protection; loss of filial care or attention; loss of parental care or training; and the reasonable funeral expenses for the deceased. Karen suffered bodily injury, *i.e.*, death.

The trial court found that the coverage and exclusion clauses were ambiguous, and that the ambiguity or conflict in the provisions of an insurance policy was to be construed strictly against Patrons and in favor of its insured. It said that the language in the insurance contract was ambiguous because the words used to express the meaning and intention of the parties were insufficient and the contract could be understood to reach two or more possible meanings.

We do not agree with the trial court's finding that the policy is ambiguous. The policy simply states that personal liability coverage does not apply to (1) bodily injury or death which is expected or intended by the insured or (2) bodily injury or death to any insured. This is not ambiguous. The coverage neither compensates individuals who suffer injury or damages by an act that is intended or expected by the insured nor compensates any insured for bodily injury or death to an insured. Dan Harmon, an insured, is suing for damages resulting from the wrongful death of his mother, an insured. Dan's action was excluded under the homeowners policy.

Other issues raised need not be determined. Reversed.

ALLEGRUCCI, J., not participating.