(794 P.2d 310)
No. 63,243

THE SOUTHGATE BANK, *Appellee/Cross-Appellant*, v. FIDELITY & DEPOSIT COMPANY OF MARYLAND, *Appellant/Cross-Appellee*.

Opinion filed June 15, 1990.

*Louis C. Roberts* and *Daniel J. McMahon*, of Peterson, Ross, Schloerb & Seidel, of Chicago, Illinois, and *Carol A. Zuschek*, of Gilliland & Hayes, P.A., of Hutchinson, for appellant/cross-appellee Fidelity and Deposit Company of Maryland.

*Alan V. Johnson, David W. White*, and *Myron L. Listrom*, of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, for appellant Sloan, Listrom, Eisenbarth, Sloan & Glassman.

*Charles E. Hoffhaus, Dennis L. Davis*, and *Daniel P. Wheeler*, of Hillix, Brewer, Hoffhaus, Whittaker & Horner, of Kansas City, Missouri, for appellee/cross-appellant The Southgate Bank.

Before DAVIS, P.J., ELLIOTT, J., and DANIEL L. BREWSTER, District Judge, assigned.

ELLIOTT, J.: Fidelity & Deposit Company of Maryland (F&D) and the law firm of Sloan, Listrom, Eisenbarth, Sloan & Glassman (Sloan) appeal from a jury verdict and trial court sanctions concerning plaintiff The Southgate Bank's (Bank) blanket bond insurance coverage.

We affirm in part and reverse in part. The facts will be detailed only as necessary in deciding the issues presented by the appeal.

Kroh Brothers Development Corporation sought to borrow money from the Bank, which would have exceeded Bank's lending limit. Instead, brothers George and John Kroh personally borrowed $675,000 each with their wives signing the notes as co-borrowers and co-obligors. We are concerned only with the loan to George and Carolyn Kroh.

The loan went into default and Bank sued George and Carolyn to collect the debt. George then filed bankruptcy proceedings in Missouri. Carolyn in her answer pled her signature on the note was not genuine (George's personal secretary admitted signing Carolyn's signature on the note).

Subsequently, Bank filed a proof of loss with F&D under its blanket bond, which covered loss from forgeries. F&D denied coverage and refused to pay the claim.

Bank, at F&D's request and pursuant to Bank's contractual obligation to protect F&D's potential subrogation rights against George, filed a complaint in George's bankruptcy case seeking a nondischargeable judgment for the debt. F&D did not intervene in the bankruptcy action.

The bankruptcy court, based "on the evidence of record, and the consent of [George's] counsel," found that George had represented to Bank that the note had been executed and delivered by Carolyn; that in consideration of and in reliance on the note, Bank extended credit; that Carolyn's signature had been forged; and that George had actual knowledge of the forgery. Accordingly, the bankruptcy court granted Bank a nondischargeable judgment against George in the amount of $675,000, plus $154,602 in interest, with interest continuing to accrue at the contract rate.

Eventually, the trial court took judicial notice of the bankruptcy court's finding that Carolyn's signature was forged. The jury found that F&D had breached its obligation to Bank with respect to the note under section D of the blanket bond.

Post-trial, the district court denied Bank's request for fees pursuant to K.S.A. 40-256; denied F&D's motion for new trial; and granted sanctions against F&D and Sloan. F&D and Sloan appealed, and Bank cross-appealed.

## THE APPEAL

F&D contends the trial court erred in judicially noticing the bankruptcy findings and in precluding it from relitigating the issue of whether Carolyn's signature on the note was forged.

Traditionally, a former finding is binding only on the parties to the proceeding in which it was rendered and their privies. *Keith v. Schiefen-Stockham Insurance Agency, Inc.*, 209 Kan. 537, 546, 498 P.2d 265 (1972). F&D argues it was not in privity with its insured Bank; it was not a party to the nondischargeability complaint in George's bankruptcy case.

As we read *Patrons Mut. Ins. Ass'n v. Harmon*, 240 Kan. 707, 711, 732 P.2d 741 (1987), where there is a separate action on the coverage question, issues decided against the insurer's interest in an underlying tort suit can have binding or estoppel effect. On the other hand, a reservation of the coverage question in an underlying action can preclude application of collateral estoppel. See *State Farm Fire & Casualty Co. v. Finney*, 244 Kan. 545, 549, 770 P.2d 460 (1989).

In the present case, the complaint in bankruptcy court was filed pursuant to Bank's contractual obligation to protect F&D's subrogation rights against George, and at F&D's request. F&D

did not intervene or protect its right to litigate the issue of forgery (and therefore coverage) in a later action.

Additionally, F&D's actions are analogous to invited error. Having requested Bank to pursue the forgery issue in bankruptcy court, it cannot now complain that Bank was successful in achieving that which was requested: a nondischargeable judgment against George based on forgery and fraud. See *Manley v. Wichita Business College*, 237 Kan. 427, 438, 701 P.2d 893 (1985).

F&D also argues that, because the bankruptcy judgment resulted from less than a full-blown adversarial proceeding, it must, therefore, have resulted from "legal collusion"; thus, it was not binding on F&D. We disagree, as did the trial court.

In *Shelman v. Western Casualty & Surety Co.*, 1 Kan. App. 2d 44, 54, 562 P.2d 453, *rev. denied* 225 Kan. 845 (1977), the fact that plaintiff's claim in an underlying tort case was not contested did not support an inference of "legal collusion" that would bar application of the doctrine of collateral estoppel. See also *Banister v. Carnes*, 9 Kan. App. 2d 133, 675 P.2d 906 (1983) (res judicata effect given to 8 default judgment).

In addition, F&D acquiesced in the resulting bankruptcy court judgment by requesting Bank to proceed and then failing to intervene or protect its interest against Bank.

Finally, F&D's argument that Bank raised the collateral estoppel issue too late for F&D to protect itself makes sense only if F&D failed to properly research and prepare for the recognized potential of a collateral estoppel claim.

The trial court did not err in judicially noticing the bankruptcy court findings and in precluding F&D from relitigating the issue of forgery.

F&D next claims the trial court erred in not allowing expert testimony regarding what is reasonable banking practice. During the trial, it appears that everyone accepted the general principle that negligence of the insured Bank is not a defense to F&D's liability under the bond. See *First Hays Banshares, Inc. v. Kansas Bankers Surety Co.*, 244 Kan. 576, 588, 769 P.2d 1184 (1989).

F&D argued to the trial court that its evidence of negligence was not offered as an exclusion or defense but rather went to the issue of what caused the loss. In effect, F&D wanted to show

that Bank was falling all over itself to loan money to the Krohs and did not rely on the forged signature.

Bank admitted causation could go to the jury as relevant evidence of its reliance on the forged signature, but objected to any evidence which merely stated Bank acted negligently.

The trial judge felt that F&D was trying to bootstrap negligence into reliance and commented:

"Now you say that you are not relying on the negligence as a defense; you just simply want to submit it as one possible causation. Frankly, I'm having a lot of trouble making the distinction that you are trying to make me make because it seems to me that when you rely on the defense of contributory negligence in an automobile accident case or comparative negligence, what you are saying is the injury was caused by the plaintiff's own negligence."

F&D was told it could present evidence relating to the issue of reliance, but was instructed not to use the word "negligence." The trial court, therefore, did not expressly prohibit F&D from putting on its expert witnesses. F&D, in fact, did not call the witnesses. Instead, at the close of trial, F&D proffered testimony to the effect that Bank's handling of the loan transaction failed to meet reasonable banking standards and was therefore negligent.

Given these facts, we fail to see how the trial court erred in its rulings. The trial court did not prohibit expert testimony on the issue of causation so long as the word "negligence" was not used. Surely, F&D's experts could have testified concerning conduct falling below reasonable banking standards without using the forbidden word. But F&D did not even attempt to put on the expert testimony. By its own actions, this claimed error would be harmless at best. See *Hagedorn v. Stormont-Vail Regional Med. Center*, 238 Kan. 691, 701, 715 P.2d 2 (1986); *Manley v. Wichita Business College*, 237 Kan. 427, 438, 701 P.2d 893 (1985).

F&D next argues the trial court erred in refusing to give its requested instruction on causation.

The trial court instructed the jury that for Bank to recover on the forged note, it had to prove it suffered a loss as a direct result of the forgery. F&D requested an instruction which essentially defined "direct cause" as the sole cause.

Errors regarding instructions do not demand reversal unless they result in clear prejudice to appellant. Where the instructions, when considered together and as a whole, are substantially correct and could not reasonably mislead the jury, they will be upheld on appeal. *Trout v. Koss Constr. Co.*, 240 Kan. 86, 88-89, 727 P.2d 450 (1986).

The instructions in the present case are sufficient to be affirmed. Because F&D's attempt to use negligence as causation evidence was properly excluded, the only question left to consider is a definition of "direct cause."

"Direct result"—the phrase used by the trial court—is not a difficult term for the jury to understand. The PIK committee recommends that *no* instruction be given to define causation, and "direct" is the suggested adjective to be used if one is needed. PIK Civ. 2d 5.01. The comments state: "As with 'reasonable doubt,' attempts to define causation make the meaning more obscure."

The instructions submitted in this case were substantially correct and not likely to mislead the jury. The trial court did not err in refusing F&D's requested instructions.

Finally, F&D and Sloan contend the trial court erred in assessing sanctions against them. We agree.

In F&D's post-trial motion, one of the reasons given to support its contention of error on collateral estoppel was that the bankruptcy judgment was obtained through collusion. Bank responded with a motion for sanctions under K.S.A. 60-211 and 60-2007 for raising a claim of "collusion, fraud and bad faith which they know to be not well grounded in fact."

While Bank characterized F&D's allegation of collusion as an allegation of fraud, our conclusion is that F&D had been pushing only the claim that "legal collusion" is enough to preclude collateral estoppel. F&D based its argument on *Grummons v. Zollinger*, 240 F. Supp. 63 (N.D. Ind. 1964), where the court found a less than adversarial proceeding was "collusion" enough to preclude collateral estoppel.

Trial courts are encouraged to impose sanctions under the two statutes to protect litigants from harassment in clear cases of violation of professional duty. *Rood v. Kansas City Power & Light Co.*, 243 Kan. 14, 22, 755 P.2d 502 (1988). In order to impose

sanctions under K.S.A. 60-2007, the claim must be asserted without reasonable basis in fact and the claim must not be asserted in good faith. 243 Kan. at 24.

It appears to us that Bank's request for sanctions got the benefit of its own characterization of F&D's claim. F&D needed to defeat the collateral estoppel effect of the bankruptcy court rulings, and "legal collusion" was a theory that had been followed in other jurisdictions. The fact that the district court properly rejected the theory does not make the claim frivolous or not asserted in good faith. See *City of Shawnee v. Webb*, 236 Kan. 504, 512, 694 P.2d 896 (1985).

The purpose of K.S.A. 60-2007 is to penalize only willful misuses of the judicial process. *Smith v. Dunn*, 11 Kan. App. 2d 343, 348, 720 P.2d 1137 (1986). Since F&D had case law to support its claim of "legal collusion," there was no evidence to support a finding that F&D did not assert the claim in good faith.

We hold, therefore, that the trial court erred as a matter of law in finding the second requirement for imposition of sanctions against F&D and Sloan had been satisfied.

## THE CROSS-APPEAL

Bank contends the trial court erred in denying its request for attorney fees under K.S.A. 40-256, which provides for fees when an insurance company refuses a claim without just cause or excuse.

In order to justify an award of fees, the denial of a claim must be frivolous and unfounded and must be patently without any reasonable foundation. *Clark Equip. Co. v. Hartford Accident & Indemnity Co.*, 227 Kan. 489, 493-94, 608 P.2d 903 (1980).

The question of whether an insurance company refused to pay a claim without just cause or excuse presents a question of fact for the trial court. 227 Kan. at 493.

There is ample competent evidence to support the finding that a genuine issue existed as to whether Bank relied on the forged signature, to constitute just cause or excuse for F&D's refusal to pay the bond claim. Although Bank takes issue with the language of the trial court's memorandum, the court's reasoning simply reflects the accepted standard that, if a good faith question of law or fact exists, then the insurance company has not refused

payment without just cause or excuse. See *Friedman v. Alliance Ins. Co.*, 240 Kan. 229, 239, 729 P.2d 1160 (1986).

Whether just cause exists is to be determined by the circumstances facing the insurer when payment is denied, judged as they would appear to a reasonably prudent person having a duty to investigate in good faith. *Watson v. Jones*, 227 Kan. 862, 871, 610 P.2d 619 (1980).

In the present case, the trial court's comments clearly indicate that, even if there had been a full-blown investigation, F&D would have had genuine issues of fact and law to justify litigation of the coverage question.

The trial court did not err in denying Bank's request for fees under K.S.A. 40-256.

As to the appeal, the judgment is reversed as to the assessment of sanctions and is affirmed as to all other issues. The cross-appeal is affirmed.