(825 P.2d 1144)

No. 66,677

THE CATHOLIC DIOCESE OF DODGE CITY, *Appellant,* v. CHAD A. RAYMER, ANTHONY HAMMEKE, TERRY RAYMER, TERESA RAYMER, ALLAN HAMMEKE, and BRENDA HAMMEKE, *Defendants,* v. FARMERS INSURANCE CO., INC., *Appellee.*

Opinion filed February 7, 1992.

*Robert S. Lannin,* of Croker, Huck, Kasher, Lanphier, Dewitt & Anderson, P.C., of Omaha, Nebraska, and *Martin J. Keenan,* of Keenan & Boeckman, P.A., of Great Bend, for appellant.

*Jerry M. Ward,* of Ward Law Office, of Great Bend, for appellee.

Before RULON, P.J., GERNON, J., and M. KAY ROYSE, District Judge, assigned.

RULON, J.: The Catholic Diocese of Dodge City, plaintiff, appeals the district court's award of summary judgment to Farmers Insurance Co., Inc., (Farmers), defendant, in a garnishment proceeding. The Catholic Diocese contests the court's finding that property damage caused by an insured under the provisions of a homeowner's policy issued by Farmers is excluded from coverage under that policy. We reverse and remand the cause with directions.

The facts distilled to their essence are as follows:

On September 25, 1988, Anthony Hammeke, a minor, participated in acts of vandalism against St. Patrick's School, which is

located in Great Bend, Kansas. The Catholic Diocese, owner of the school, filed a petition against Anthony and his parents, Allan and Brenda Hammeke, alleging a cause of action for property damage against Anthony; and a cause of action for property damage against Allan and Brenda based on their failure to exercise reasonable parental care in controlling and supervising Anthony and on their liability pursuant to K.S.A. 38-120 for the damages intentionally caused by Anthony. Farmers, Allan and Brenda's homeowner's insurer, was notified of the action on October 19, 1989.

Eventually, the district court ordered a default judgment in rem against Allan and Brenda Hammeke for failure to exercise reasonable care in controlling and supervising Anthony. The damages awarded were $18,858.67. The Catholic Diocese then filed for an order of garnishment against Farmers. Farmers filed an answer claiming it was not indebted to Allan and Brenda under their homeowner's insurance policy because the policy did not cover property damage either expected or intended by the policy insureds.

The pertinent provisions of the homeowner's policy before us are as follows:

"**DEFINITIONS**

"Throughout this policy, 'you' and 'your' mean the 'named insured' shown in the Declarations and spouse if a resident of the same household. 'We,' 'us' and 'our' mean the Company named in the Declarations which provides this insurance. In addition certain words appear in bold type. They are defined as follows:

1. Under Section II-Liability, **occurrence** means: a sudden event, including continuous or repeated exposure to the same conditions, resulting in **bodily injury** or **property damage** neither expected nor intended by the **insured**.

. . . .

7. **Insured** means you and the following **persons** if permanent residents of your household:

a. your relatives.

b. anyone under the age of 21.

. . . .

"**SECTION II-LIABILITY**

"Coverages

"Coverage E-Personal Liability

"We shall pay all damages from an **occurrence** which the **insured** is legally liable to pay because of **bodily injury** or **property damage** covered by this policy.

"At our expense we shall defend an **insured** against any covered claim or suit. We may investigate and settle any claim or suit that we consider proper

. . . .

"Exclusions

. . . .

"**Applying To Coverage E AND F-Personal Liability and Medical Payments To Others**

"We do *not* cover **bodily injury** or **property damage**:

. . . .

3. Either:

a. caused intentionally by or at the direction of an **insured**, or

b. resulting from any **occurrence** caused by an intentional act of an **insured person** where the results are reasonably foreseeable.

. . . .

"**Conditions**

. . . .

2. *Separate Insurance.* This insurance applies separately to each **insured**. This condition does not increase our limit of liability for any one **occurrence**."

Both parties ultimately moved for summary judgment. The district court granted summary judgment to Farmers. The court essentially ruled that Anthony was an insured under the policy and that the damage he caused was intentional.

We must decide if the homeowner's policy issued by Farmers to Allan and Brenda provides coverage for their liability in an action which sought recovery for intentionally caused property damage caused by another insured under the same policy.

The standard of appellate review of a grant of summary judgment is well established:

"Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. [Citations omitted.] When a summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment. [Citations omitted.]" *Patterson v. Brouhard*, 246 Kan. 700, 702-03, 792 P.2d 983 (1990).

The parties agree there are no controverted material facts.

The Catholic Diocese first argues Farmers is bound by the default judgment finding Allan and Brenda negligent in super-

vising Anthony. The Catholic Diocese specifically argues that because Farmers merely refused to defend the Hammekes instead of seeking a declaratory judgment on its duty to defend or reserving its rights in the lawsuit, it should be bound by the default judgment because it did have a duty to defend the Hammekes in the lawsuit.

The Kansas Supreme Court discussed the rules governing an insurer's duty to defend in *Patrons Mut. Ins. Ass'n v. Harmon*, 240 Kan. 707, 709-10, 732 P.2d 741 (1987):

> "Patrons is not bound to defend an insured in actions brought wholly outside any coverage obligations assumed in the policy or when the insurer would have no liability if the plaintiff secured a judgment against the insured. Where there is no coverage, there is no duty to defend. [Citation omitted.]
>
> "Patrons must look beyond the effect of the pleadings and consider any facts brought to its attention or any facts which it could reasonably discover when determining whether it has a duty to defend. If those facts give rise to a 'potential of liability' under the policy, Patrons has a duty to defend. [Citation omitted.] The possibility of coverage may be remote, but if it exists the company owes the insured a defense. The possibility of coverage must be determined by a good faith analysis of all information known to the insured or all information reasonably ascertainable by inquiry and investigation. If ambiguities in coverage, including exclusionary clauses, are judicially determined against the insurer, the ultimate result controls the insurer's duty to defend. [Citation omitted.]"

The Catholic Diocese argues that the holding in *Patrons* requires that an insurer, to prevent an estoppel effect by the underlying lawsuit, either file a declaratory judgment action or reserve its rights when a question of policy coverage exists. In the context of conflicting interests between the insurer and the insured, the *Patrons* court did state: "We believe [reservation of rights by the insurer] is the proper procedure to protect the rights of both parties under their contract." 240 Kan. at 712. Furthermore, this court in *Southgate Bank v. Fidelity & Deposit Co. of Maryland*, 14 Kan. App. 2d 454, 456, 794 P.2d 310 (1990), did interpret *Patrons* to mean that "where there is a separate action on the coverage question, issues decided against the insurer's interest in an underlying tort suit can have binding or estoppel effect."

However, in this garnishment proceeding, a separate action on Farmers' coverage of Allan and Brenda's liability for property

damage, Farmers does not contest or wish to relitigate the default judgment finding Allan and Brenda negligent in supervising their minor son Anthony. Farmers is only arguing that Allan and Brenda's liability for this judgment is not covered by the policy because the action originally sought recovery for damages intentionally caused to property, damages which its policy excludes from coverage. Under *Patrons*, the ultimate determination of whether there is a duty to defend is whether coverage exists under an insurance policy. "Where there is no coverage, there is no duty to defend." *Patrons*, 240 Kan. at 709.

The law is well settled concerning our review of a written instrument:

"The construction of a written instrument is a question of law, and the instrument may be construed and its legal effect determined by an appellate court. [Citation omitted.] Whether an ambiguity exists in a written instrument is a question of law to be decided by the court. [Citation omitted.]" *Kennedy & Mitchell, Inc. v. Anadarko Prod. Co.*, 243 Kan. 130, 133, 754 P.2d 803 (1988).

Farmers essentially claims the plain language of this policy excludes coverage for the damage sought to be recovered by the Catholic Diocese in its action against Allan and Brenda. The coverage portion for personal liability in the policy states: "We shall pay all damages from an occurrence which the insured is legally liable to pay because of bodily injury or property damage covered by this policy."

The above provision, however, is limited by the following exclusionary provision: "We do *not* cover **bodily injury** or **property damage** . . . caused intentionally by or at the direction of an **insured** . . . ." Our initial reading of this exclusion seems to indicate the property damage for which Allan and Brenda are liable is not covered because it was intended by Anthony, an insured under the policy.

We are guided by well-settled law in deciding if language contained in an insurance policy is ambiguous:

"To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning. [Citation omitted.]

"The language of a policy of insurance, like any other contract, must if possible, be construed in such manner as to give effect to the intention of the parties. Where the terms of a policy of insurance are ambiguous or uncertain, conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail. Since the insurer prepares its own contracts, it has a duty to make the meaning clear. If the insurer intends to restrict or limit coverage provided in the policy, it must use clear and unambiguous language in doing so; otherwise, the policy will be liberally construed in favor of the insured. When an insurance contract is not ambiguous, the court may not make another contract for the parties. Its function is to enforce the contract as made. [Citation omitted.]" *Patrons*, 240 Kan. at 713.

The Catholic Diocese seeks a favorable interpretation of the policy language "an insured" by contending "an insured" should be equated with "the insured" so that the exclusion from coverage will not operate against Allan and Brenda. By attaching this meaning to "an insured," this language would not refer to Anthony, an insured under the policy who intentionally caused the property damage, but to his parents, the insureds seeking policy coverage. Therefore, because Allan and Brenda did not intentionally cause the damage, their claim would be covered.

However, cases interpreting "an insured" or similar language in similar policy exclusion provisions have concluded the contrary. "An insured" or "any insured" refers to any and all insureds under the policy, not just "the insured" seeking coverage under the policy. See *Travelers Ins. Co. v. Blanchard*, 431 So. 2d 913, 914-15 (La. App. 1983) ("an insured person" clearly and unambiguously refers to all policy insureds, not just particular insured sought to be held liable); *Allstate Ins. v. Freeman*, 432 Mich. 656, 694-95, 699, 443 N.W.2d 734 (1989) (provision excluding coverage for intentional or criminal acts of "an insured person" unambiguously *excludes coverage for damages intentionally* caused by *any* insured under the policy); *Farmers Insurance v. Hembree*, 54 Wash. App. 195, 200, 773 P.2d 105 (1989) ("an insured" includes anyone insured under the policy).

The Catholic Diocese, however, contends the presence in the policy of the following language known as a severability of interests clause makes the exclusionary provision ambiguous: "This insurance applies separately to each **insured**. This condition does not increase our limit of liability for any one **occurrence**." *Blan-*

*chard*, 431 So. 2d 913, and *Hembree*, 54 Wash. App. 195, do not consider severability of interests clauses.

While the Michigan Supreme Court in *Freeman*, 432 Mich. 656, did not consider any severability of interest clause in the insurance policy under consideration in that case, the court did consider the insured's argument that the insurer had "a separate and distinct duty to cover each insured under the policy," the virtual equivalent of a severability clause. 432 Mich. at 690. In *Freeman*, Alonda Freeman shot Kelly in the shoulder. Kelly eventually filed a tort suit in which she essentially alleged Marshall Freeman, Alonda's husband, negligently entrusted a firearm to Alonda. The trial court granted Marshall's insurer, Allstate, summary judgment in a declaratory judgment action, concluding Allstate had no duty to defend Marshall in the tort suit. 432 Mich. at 682-84.

The homeowner's policy under which Marshall sought coverage for the claim against him contained a provision excluding from coverage "'bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person.' " 432 Mich. at 685. The *Freeman* court concluded that under such exclusion, Allstate had no duty to defend or indemnify Alonda. 432 Mich. at 689.

Marshall raised two arguments in support of his contention that Allstate had a duty to defend him in the tort suit. As discussed earlier, the Michigan Supreme Court rejected his argument that "an insured" was ambiguous. See 432 Mich. at 699. Marshall additionally argued that Allstate had a separate duty to cover him under the policy. The court, however, found that any duty of Allstate to defend Marshall was solely derivative of its duty to defend Alonda under the policy. 432 Mich. at 690. The court agreed the exclusion focused on "bodily injury" and that Alonda's conduct precluded Marshall's claim for coverage under the policy. 432 Mich. at 692.

In support of its holding, the *Freeman* court cited and discussed two cases where the insureds had sought coverage for claims of negligent entrustment of a vehicle brought against them. These cases denied coverage because the negligent entrustment theory is derived from the ownership, use, or operation of a vehicle.

Claims based on vehicle ownership, use, or operation were in some way excluded from coverage by the homeowner's policies at issue in the cases. Because claims against the insureds actually using the vehicles were not covered, claims for negligent entrustment of the vehicles were not covered. 432 Mich. at 690-92. The *Freeman* court stated " 'we look to the underlying cause of the injury to determine coverage and not to the specific theory of liability.' " 432 Mich. at 690.

Thus, while not actually considering the effect of a severability of interests clause on a provision excluding from coverage intentional acts by an insured, *Freeman* did consider and reject an argument that is virtually the same as a severability clause: that the insurer had a separate duty to cover each insured under the policy. The *Freeman* court based its rejection of the contention that such a duty makes ambiguous an intentional acts exclusion on cases denying coverage under a homeowners policy for negligent entrustment. However, Kansas lacks a similar basis in our case law, as *Upland Mutual Insurance, Inc. v. Noel*, 214 Kan. 145, 519 P.2d 737 (1974), extended coverage under a homeowners policy to a claim for negligent entrustment of a vehicle.

In *Noel*, the homeowners policy covered damages for bodily injury and property damage, but excluded from coverage " ' "the ownership, maintenance, operation, use, loading and unloading of (1) automobiles or midget automobiles while away from the premises or the ways immediately adjoining . . . ." ' " 214 Kan. at 147.

In finding coverage for a claim of negligent entrustment of a vehicle, the Kansas Supreme Court stated:

"We hold that the trial court correctly decided all of the issues of law submitted to it. Upland Mutual was obligated under its homeowner's policy to defend the Noels against the Forresters' action. It is the general rule that exceptions, limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms. [Citation omitted.] In the homeowner's policy involved in this case the company agreed with the named insured to pay on behalf of the insured *all sums which the insured should become legally liable to pay because of bodily injury and property damages.* There is nothing in this broad insuring clause which restricts coverage to accidents or injuries occurring on the premises of the

homeowner. In fact it is clear that the insuring clause covers a wide variety of accidents which might occur off the premises. Any escape from liability by Upland Mutual under its policy must be found in the special exclusion which has been set forth in full above. We have held that where an insurer attempts to avoid liability under an insurance policy on the ground that the loss for which recovery is sought is covered by some exclusionary clause, the burden is on the insurer to prove the facts which bring the case within the specified exception. [Citation omitted.]

"In this case the action filed by the Forresters against the 'Noels was not based upon the 'ownership, maintenance, operation, use, loading or unloading of . . . automobiles', even though the immediate cause of injury and death was Steven's operation of the automobile. The basis of the Forresters' action was the alleged negligence of the Noels in knowingly entrusting an automobile to a careless and reckless driver. The theory of liability upon which the petition was framed is well-recognized in Kansas. [Citations omitted.]

"Nowhere is it alleged in the Forresters' petition that the Noels are liable on the theory that they owned, maintained, operated or used the automobile or that the automobile was negligently driven by the Noels or their. agent. The theory of the Forresters' damage action is not directly related to the 'ownership, maintenance, operation, use' of the vehicle." 214 Kan. at. 149-50.

The court later stated, "The rationale of the 'negligent entrustment' cases is not founded upon the negligence of the driver of the automobile but upon the *primary* negligence of the entruster in supplying the chattel, an automobile, to an incompetent and reckless driver." 214 Kan. at 151.

We believe that, unlike Michigan, Kansas does not look to the underlying cause of the injury to determine coverage, but to the specific theory of liability alleged. The basis upon which the *Freeman* court rested its holding that an insurer's separate duty to cover each policy insured does not make ambiguous an exclusion for an insured's intentional acts is not present in Kansas law.

Our Supreme Court considered the impact of a severability of interests clause on a policy exclusion in *Rose Constr. Co. v. Gravatt*, 231 Kan. 196, 642 P.2d 569 (1982). In that garnishment proceeding against an insurer, the insurer denied a claim for coverage based on an exclusion: " '[T]o damage to (a) property owned or transported by the insured, (b) property rented to or in charge of the insured other than a residence or a private garage, or (c) property as to which the insured is for any purpose exercising physical control.' " 231 Kan. at 197. The court stated

Gravatt, the insured for whom coverage was sought, neither rented, was in charge of, nor controlled the damaged property and then considered the impact of a severability of interests clause on the exclusion. 231 Kan. at 197.

The court resolved the issue of whether the claim against Gravatt was covered by the policy as follows:

"The exclusion before us excludes damages to property 'rented to or in charge of *the insured.*' Use of the term 'the insured' is significant. It obviously is not the same as 'named insured' or 'any insured.' Even in the absence of a severability of interests clause, a strong argument could be made that the exclusions do not apply to Gravatt inasmuch as he is the insured for exclusionary purposes, and he neither rents, has charge of, nor controls the damaged property. The severability of interests clause can only buttress the argument that coverage as to each insured must be determined separately based on the facts applicable to each such insured.

"We conclude that the severability of interests clause requires a finding that the exclusions are to be applied only against the insured for whom coverage is sought. Under the undisputed facts herein, defendant Gravatt was clearly not excluded from coverage, and the trial court erred in holding otherwise." 231 Kan. at 198.

In light of *Noel,* which looked to the theory of liability in determining policy coverage, and *Rose Constr. Co.,* which expressly held a severability clause requires that policy exclusions are to be applied only against the insured for whom coverage is sought, we believe the exclusion in this homeowner's policy should not be construed to deny coverage for Allan and Brenda's liability for negligently supervising their minor child Anthony. Farmers' insertion into the policy of a severability of interests clause makes ambiguous the otherwise unambiguous language of the exclusion for intentional acts by an insured. "It is the general rule that exceptions, limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms." *Noel,* 214 Kan. at 149.

The Wisconsin Court of Appeals in *Northwestern Nat. Ins. Co. v. Nemetz,* 135 Wis. 2d 245, 400 N.W.2d 33 (Wis. App. 1986), concluded that a severability of interests clause makes ambiguous an exclusion similar to the exclusion at issue here. The Wisconsin court reasoned:

"Here, . . . we face an insurance contract with a severability clause purporting to separate the insureds' interests while the exclusion clause, 'we do not cover . . . damage . . . expected or intended by an insured,' attempts to join the insureds' obligations. We conclude that this contract is ambiguous because the severability clause creates a reasonable expectation that each insured's interests are separately covered, while the exclusion clause attempts to exclude coverage for both caused by the act of only one. Thus, we must construe the policy against Auto-Owners. We cannot release an insurer from a risk that may have been excluded through more careful contract drafting. [Citation omitted.]

"Additionally, Auto-Owners argues that affording coverage to Hazel renders the exclusion clause superfluous. We agree that if other things are equal, we must construe a policy to give reasonable effect to every clause. [Citation omitted.] However, this rule does not compel us to give full effect to an ambiguous clause. Moreover, our construction does not render the exclusion superfluous. Under the clause, the policy still affords no liability coverage to any insured who intends or expects damage." 135 Wis. 2d at 256-57.

One case cited by Farmers in support of its position is *Chacon v. American Family Mut. Ins. Co.*, 788 P.2d 748 (Colo. 1990). In *Chacon*, the Colorado Supreme Court did reject arguments that a severability of interests clause made ambiguous an exclusion for bodily injury or property damage "'intended by any *insured*.' " 788 P.2d at 750, 752. In reaching its decision, the court discussed cases which concentrated on the meaning of the language "any insured" as opposed to "the insured." 788 P.2d at 751. Although it acknowledged decisions finding exclusions from coverage ambiguous because of severability clauses, the *Chacon* court found the decisions denying coverage more persuasive because each decision "considers and gives effect to all the policy provisions and recognizes that an insurance policy is a contract between the parties which should be enforced in a manner consistent with the intentions expressed therein." 788 P.2d at 752. When considering our Supreme Court decisions in *Noel*, 214 Kan. 145, and *Rose Constr. Co.*, 231 Kan. 196, *Chacon* and the reasoning on which it relies are not persuasive.

We reverse the award of summary judgment to Farmers in this garnishment action and remand the cause with instructions to enter summary judgment for the Catholic Diocese.