(968 P.2d 270)
No. 78,297

STATE FARM INSURANCE COMPANIES, *Appellee,* v. JAMES J.
GERRITY and NOVA, INC., *Defendants,* and R. W., *Appellant.*

Opinion filed
November 20, 1998.

*Rodney K. Murrow* and *Joseph K. Lewis, Jr.,* of Herron & Lewis, of Kansas
City, Missouri, for appellant.

*Gerald A. King* and *Theodore A. Corless,* of Armstrong, Teasdale, Schlafly &
Davis, of Kansas City, Missouri, for appellee.

Before ELLIOTT, P.J., GREEN, J., and ROGG, S.J.

GREEN, J.: This litigation involves a declaratory judgment action
brought by State Farm Insurance Companies (State Farm). State
Farm seeks a determination that a homeowner's policy of insurance
and a personal liability umbrella policy issued to its insured, James
Gerrity, furnished no coverage for claims made by R. W. against
Gerrity. Both State Farm and R.W. moved for summary judgment.

The trial court denied R.W's motion and granted State Farm's motion. We affirm.

Gerrity and R.W., a minor, were driving from St. Louis to Indianapolis. While R.W. was asleep in the passenger seat, Gerrity reached over and removed R,W.'s penis from his swimming trunks. Gerrity manipulated R.W.'s penis until R.W. ejaculated. Gerrity's physical contacts with R.W.'s body were without R.W.'s consent.

R.W. sued Gerrity, claiming that he was assaulted and battered, was negligently injured, and was treated with reckless disregard and outrage by Gerrity. State Farm, Gerrity's insurer, moved for a declaratory judgment, claiming that Gerrity's homeowner's and personal liability policies provided no coverage resulting from Gerrity's sexual molestation of R.W.

On appeal, R.W. argues that the trial court improperly granted summary judgment in favor of State Farm. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260, 891 P.2d 435 (1995). Whether the trial court erred in granting State Farm summary judgment depends upon the construction given the language of the policy. Our Supreme Court has frequently observed that " '[a]s a general rule, the construction and effect of a contract of insurance is a matter of law to be determined by the court. If the facts are admitted, then it is for the court to decide whether they come within the terms of the policy.' *Farm Bureau Mut. Ins. Co. v. Horinek*, 233 Kan. 175, Syl. ¶ 1, 660 P.2d 1374 (1983)." *Harris v. Richards*, 254 Kan. 549, 552, 867 P.2d 325 (1994). Here, the facts are essentially undisputed.

R.W. argues Gerrity's homeowner's policy provides coverage for the claims arising from Gerrity's molestation of R.W. Gerrity's homeowner's insurance policy states:

"COVERAGE L - PERSONAL LIABILITY

"If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable."

Bodily injury includes bodily harm, sickness, or disease. Occurrence is defined as an accident which results in bodily injury. For R.W.'s argument to succeed, we would have to determine that the molestation of R.W. was an accident. Although the policy itself does not define accident, our Supreme Court has stated that an undefined word must be understood in its "plain, ordinary, and popular sense." *Blue v. Aetna Life Ins. Co.*, 208 Kan. 937, 940, 494 P.2d 1145 (1972). Moreover, our Supreme Court has defined accident as " 'an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force.' " *Harris*, 254 Kan. at 553 (quoting *Gilliland v. Cement Co.*, 104 Kan. 771, 773, 180 Pac. 793 [1919]). Gerrity's act of sexually molesting R.W., while he was asleep, cannot be deemed an accident. The above definition suggests an event outside the realm of an individual's control. Gerrity's acts cannot be so described. Gerrity, himself, controlled his actions.

Furthermore, the policy states that personal liability coverage does not apply to bodily injury "(1) which is either expected or intended by an insured; or (2) to any person . . . which is the result of willful and malicious acts of an insured." R.W. argues the intentional acts exclusion does not prevent coverage because Gerrity's acts were not intentional. R.W. suggests this court should look to the specific theory of liability alleged in the underlying civil action to determine whether Gerrity's acts were intentional.

R.W. relies on *Catholic Diocese of Dodge City v. Raymer*, 16 Kan. App. 2d 488, 825 P.2d 1144, *aff'd* 251 Kan. 689, 840 P.2d 456 (1992). There are two problems with R.W.'s argument. First, R.W.'s civil petition against Gerrity alleged intentional harm. Second, even if *Raymer* were applicable, it is distinguishable. In *Raymer*, the plaintiff sued a minor for intentional vandalism and his parents for negligent supervision. The family's insurance policy contained an intentional acts exclusion. It also contained a severability of interests clause which, according to the court, made the intentional acts exclusion ambiguous. 16 Kan. App. 2d 497-98. In affirming the *Raymer* decision, our Supreme Court agreed with this court that even though the intentional acts exclusion would exclude coverage of the child's liability, the policy did not exclude

coverage for the separate and distinct theory of negligent supervision liability of the parents. 251 Kan. 689. No such issue is involved in the instant case.

R.W. next argues there is no evidence that Gerrity intended or expected to cause R.W. harm and, thus, the intentional acts exclusion cannot apply to bar coverage. R.W. states the underlying civil claims against Gerrity sounded in negligence only and, therefore, Gerrity's acts cannot now be construed as intentional. But in ignoring the negligence claims made by the plaintiff in *First Financial Ins. Co. v. Bugg*, 265 Kan. 690, 706-07, 962 P.2d 515 (1998), our Supreme Court reasoned that theories of liability are irrelevant when injuries occur from intentional acts. Therefore, an appellate court should not look to the specific theories of liability alleged but to the underlying cause of the injuries. Although *Bugg* involves an assault and battery exclusion and this case involves an intentional acts exclusion, the *Bugg* holding is applicable to the present case.

For instance, the *Bugg* court reiterated the natural and probable consequences test first set out in *Bell v. Tilton*, 234 Kan. 461, 470-71, 674 P.2d 468 (1983). 265 Kan. at 705-06. The test states that an intent to injure can be inferred from the nature of the act and the foreseeablity of harm flowing naturally from that act. Knowingly molesting a child certainly meets this test.

Additionally, in *Troy v. Allstate Ins. Co.*, 789 F. Supp. 1134 (D. Kan. 1992), the insured contended he did not intentionally harm the child-victim but instead believed he was helping her. The court reasoned:

"This act, perpetrated by an adult upon a child, has been found by a majority of federal jurisdictions that have considered the issue to constitute intentional harm from its very nature. [Citations omitted.]

"Common sense and legislative history lead this court to adopt the argument espoused by Allstate; that in the exceptional case of an act of child molestation, cause and effect cannot be separated, so that to do the act is necessarily to do the harm which is the consequence of the intended act. It is now a generally accepted conception that harm is inherent in the act of sexually abusing a child. [Citations omitted.] In fact, it is apparent that the Kansas Legislature has determined that harm from sexual offenses against children is inseparable from performance of the act." 789 F. Supp. at 1136.

Further, the court commented on the public policy considerations involved:

"[T]he expansion of insurance coverage to protect the insured from damages arising out of the sexual molestation of children is beyond the realm of public policy. As one court noted: '[t]he average person purchasing homeowner's insurance would cringe at the very suggestion that [the person] was paying for such coverage. And certainly, [the person] would not want to share that type of risk with other homeowner's policyholders.'" 789 F. Supp. at 1136 (quoting *Rodriguez v. Williams*, 42 Wash. App. 633, 636, 713 P.2d 135, *aff'd* 107 Wash. 2d 381, 729 P.2d 627 [1986]).

For the reasons expressed above, R.W.'s argument fails.

Next, R.W. argues that Gerrity's personal liability umbrella policy provides coverage. R.W. first argues the umbrella policy expressly provides coverage for assault and battery. The coverage portion of the umbrella policy reads: "If you are legally obligated to pay damages for a loss, we will pay your net loss minus the retained limit." Net loss is defined in part as "the amount you are legally obligated to pay as damages for personal injury." The definition of personal injury then includes "assault and battery" as a type of personal injury. Thus, R.W. argues the umbrella policy expressly provides coverage for intentional torts. However, the umbrella policy also contains an intentional acts exclusion. It states the insurance does not provide coverage "for personal injury . . . which is either expected or intended by you; or . . . to any person . . . which is the result of your willful and malicious act, no matter at whom the act was directed." Therefore, the umbrella policy will not provide coverage in a situation where the insured consciously committed an act of sexual molestation. R.W.'s additional argument that the umbrella policy's intentional acts exclusion does not apply to Gerrity because he did not intend harm fails for the reasons set out earlier.

R.W. further argues that because the umbrella policy provides coverage for assault and battery and then excepts coverage for intentional acts, it is ambiguous. Our standard of review for this issue is as follows:

"We construe an insurance policy in a way that will give effect to the intention of the parties. If the language is ambiguous, the construction most favorable to

the insured must prevail. If the policy is not ambiguous, we do not remake the contract; we enforce the contract as made." *Brumley v. Lee*, 265 Kan. 810, 812-13, 963 P.2d 1224 (1998).

In response to this argument, the trial court determined the policy covers only unintended injury that results from an intentional act. This conclusion is supported by Kansas case law. In *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. 681, 687, 512 P.2d 403 (1973), the court decided that under the policy at issue, coverage was avoided only when an act resulted in an intended injury. Furthermore, the court stated "[a]n intentional act may result in an unintended injury." 212 Kan. at 687. The policy here unambiguously provides coverage for unintended injuries resulting from intentional acts. Because this was not an unintended injury, R.W.'s argument fails.

Affirmed.