**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 18 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ROBERT DYER,

      Plaintiff-Appellee,

v.

SPORTS WORLD, INC.,

      Defendant,

ASSICURIZONI GENERALI, S.p.A.

      Garnishee-Appellant.

No. 98-3007
(D.C. No. 95-1359-JTM)
(District of Kansas)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and
**COOK**,[**] Senior District Judge.

After obtaining judgment against his tortfeasor in the amount of $1,066,484.00, the

injured party brought a garnishment action against the tortfeasor's liability insurance

carrier, the latter having declined to defend the tortfeasor and having denied coverage

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3

[**]Honorable Dale H. Cook, Senior District Judge, United States District Court for
the Northern District of Oklahoma, sitting by designation.

under its policy of insurance issued the tortfeasor.[1]  The insurance carrier by answer contested the proposed garnishment, contending that it was not bound by the judgment entered against its insured and that the injured party's claim was not a covered risk. Thereafter, the district court granted the injured party's motion for summary judgment. Accordingly, the district court entered judgment against the insurance company, and ordered it to pay the injured party $1,000,000.00 (the policy limit), plus interest from the date of judgment in the "underlying proceeding," and reasonable attorney's fees and costs incurred in the garnishment proceeding as provided by Kan. Stat. Ann. § 40-256.

The insurance company now appeals the judgment entered in the garnishment action.  At oral argument counsel for the insurance company stated that his primary request was that we reverse the judgment and remand the case to the district court and order it, after hearing, to determine whether the damage award in the underlying proceeding was "reasonable," or not.  Counsel for the injured party argues that the insurance company, having declined to represent the tortfeasor at trial, is bound by the judgment entered in the underlying proceeding and has no standing to challenge the reasonableness of the damage award, and further that, in any event, the amount of the damages awarded was in fact reasonable.  Now for some detail.

---

[1]The insurer had issued the insured a so-called Commercial General Liability Policy wherein it agreed to pay those sums the insured became "legally obligated to pay . . . . . for 'bodily injury' . . . to which this insurance applies."

On August 14, 1994, Robert Dyer ("Dyer"), age 29, was arrested by Robert Holland ("Holland"), an off-duty deputy sheriff employed as a security officer at Sports World, Inc. ("Sports World"), a video games amusement park in Wichita, Kansas. Dyer and a friend had gone to Sports World to play video games and ride the go-carts around a go-cart track. A Sports World employee believed that Dyer was driving his go-cart in a careless and reckless manner and asked him to desist and leave the premises. When Dyer did not leave immediately, Holland approached him. Dyer began to argue with Holland in a loud voice and Holland arrested Dyer for "criminal trespass." In the process Holland placed handcuffs on Dyer and escorted him off the premises and onto a parking lot. In the parking lot Dyer tripped and fell to the ground, at which time Holland "grabbed" Dyer by his right wrist and "pulled" him up. Dyer had been complaining that the handcuffs were "too tight" and Dyer testified that when Holland was pulling him to his feet he felt a sharp and persistent pain and heard a "pop" in his right wrist.

Based on the foregoing incident, on August 10, 1995, Dyer filed an action in the United States District Court for the District of Kansas against Holland and Sports World. Dyer's first claim for relief was brought under 42 U.S.C. § 1983, and in his original complaint he also asserted claims for assault, battery, unlawful imprisonment and false arrest. Sports World had a policy of liability insurance issued it by Assicurizoni Generali S.p.A. ("AG"), a company based in the United Kingdom, with home offices in Italy. In January, 1995, before any complaint was filed, Sports World had forwarded to AG's agent

a copy of Dyer's statement regarding the incident and on August 24, 1995 Sports World provided AG with a copy of the original complaint.  On September 14, 1995, AG advised Sports World that it, at least for the time being, would not defend and denied policy coverage, apparently on the ground that the policy excluded from coverage intentional conduct by Sports World's employees. In a letter of May 31, 1996, Sports World advised AG's agent that the "facts" suggested a viable case of negligence on the part of Holland, which was covered, and not excluded, under the policy.  Sports World also indicated that an amended complaint charging only negligence was about to be filed.  That letter also indicated that, unless AG assumed defense of Sports World by June 11, 1996, Sports World was considering a reasonable and appropriate "accommodation" with Dyer.  AG requested that it be given  a copy of the amended complaint, once it was filed, and that it would review the entire matter at that time.  In a faxed letter of June 18, 1996, Sports World attached a copy of an amended complaint which it said would be filed shortly. Counsel for Sports World further advised AG that it was engaged in settlement negotiations with Dyer and hoped to conclude settlement within a week.  It would appear, though it is not in the record before us, that on June 21, 1996, Dyer filed an amended complaint alleging negligence.

On June 28, 1996, Dyer, Holland and Sports World entered into a so-called "Settlement Agreement/Limited Covenant Not to Levy Execution (Not a Release)" (hereinafter the "Agreement"),  the pertinent parts of which are summarized as follows:

1.  Sports World agrees not to oppose the entry of a judgment against it and in favor of Dyer on the allegation that Dyer suffered bodily injury, including consequential damages of pain and suffering, lost past and future wages and benefits, past and future medical expenses, as a result of the causal negligence of Holland and Sports World in an amount that the Court deems appropriate. Dyer agrees that no judgment can or will be entered on allegations of assault or battery, false arrest or unlawful imprisonment under the facts determined in discovery in this case;

2.  The parties waive trial by jury;

3.  Dyer agrees not to execute against Sports World and execution on any judgment is limited to any future recovery from Sports World's insurer;

4.  Sports World will assist and cooperate with Dyer in the collection of any insurance proceeds;

5.  Dyer will file a Journal of Dismissal with Prejudice as to Holland;

6.  Sports World pays $39,000.00 to Dyer, which sum will be repaid Sports World upon any recovery from Sports World's insurer; and

7.  Sports World assigns any and all rights to insurance coverage to Dyer, except Sports World reserves the right to proceed on its own behalf to recover its damages against AG.

Pursuant to the Agreement, Dyer's claims against Holland were dismissed with prejudice on July 3, 1996. On December 5, 1996, after a one-hour bench trial, the district court found that Dyer was injured on August 14, 1994, as a result of Holland's negligence, who, at the time, was acting in the scope and course of his employment with Sports World, and awarded damages in a total sum of $1,066,484.00.[2] Of that amount,

---

[2]At this trial, Dyer was represented by Lynn Lauver, who represents Dyer in the present proceeding, and Sports World was represented by retained counsel, Richard Ewy.

$816,484.00 was for economic loss sustained by Dyer, and $250,000.00 was for non-economic loss, i.e., permanent injury.[3]

At the bench trial, Dyer testified in some detail as to the facts and circumstances surrounding the injuries to his right wrist caused by the handcuffs which he said were too tight and about which he had complained to Holland, and the manner Holland had pulled him to his feet when he tripped and fell in the parking lot. Dyer also testified as to his numerous doctor visits, hospitalization, and surgery he had on that wrist. Dyer was a member of the military and he testified that he was about to be medically discharged from the military because of the permanent injury he had in the wrist. He also stated that his retirement benefits from the military would be adversely affected by his early discharge, and an economic loss calculation prepared by a Dr. Fitzgerald was offered and received into evidence. Also, excerpts from the deposition of a friend who had accompanied Dyer to Sports World were received into evidence in which the friend gave his version of the incident in the parking lot. Finally, Dyer testified as to his limited job opportunities in the future due to his disability. No other witness was called to testify on Dyer's behalf, and Sports World, represented by private counsel and not AG, called no witnesses.

Thereafter, Dyer instituted the present garnishment proceeding against AG, which,

---

[3]We are advised that the damage award for non-economic loss equals the Kansas statutory cap for recovery on a personal injury claim (Kan. Stat. Ann. § 60-19a02) and that the amount awarded for economic loss was the same as the economic loss calculation admitted into evidence at trial.

as above stated, resulted in a summary judgment in favor of Dyer and against AG in the

amount of $1,000,000.00 (the policy limit), plus interest from the date of judgment in the

underlying proceeding, and reasonable attorney's fees and costs incurred in the

garnishment proceeding. The district court's unreported memorandum order appears as

*Dyer v. Holland,* 1997 WL 807866 (D. Kan. 1997). AG appeals.[4]

The parties agree that resolution of the present appeal turns on Kansas law. The

root of the present controversy is the fact that AG declined to appear and defend Sports

World in the action brought against it by Dyer. In this regard, the district court concluded

that AG breached its duty to defend Sports World, or if there was a conflict of interest to

obtain independent counsel to represent Sports World, in the action brought against it by

Dyer. In so doing the district court spoke as follows:

> Under Kansas law an insurance company has a duty to
> defend its insured whenever the underlying facts suggest
> even a remote possibility of coverage. *Patrons Mut. Ins.
> Ass'n v. Harmon*, 240 Kan. 707, 710, 732 P.2d 741 (1987).
> An insurance company must look beyond the pleadings and
> consider any facts brought to its attention and any facts which
> it could reasonably discover when determining whether it has
> a duty to defend. *Id*. The possibility of coverage may be
> remote, but if it exists the insurance company owes the

---

[4]The district judge in the garnishment proceeding was the judge who entered judgment in the "underlying proceeding."

insured a defense. *Id.*

*Dyer* at *3.

As we understand it, AG does not now contest the district court's holding that AG breached its duty to defend Sports World. Rather, as above stated, AG's principal argument in this court is that the judgment entered in the underlying proceeding wherein Dyer received judgment against Sports World in the amount of $1,066,484.00 is "unreasonable" in its amount, and AG asks that we reverse the judgment entered in the garnishment proceeding and remand the case to the district court with directions that it allow AG the opportunity to show that the damage award was, in fact, unreasonable. In thus arguing, counsel states that *Glenn v. Fleming,* 799 P.2d 79 (Kan. 1990) is controlling. It is true that the Kansas Supreme Court in *Glenn* endorsed the reasoning of the New Jersey Supreme Court in *Griggs v. Bertram,* 443 A.2d 163 (N.J. Sup. Ct. 1982), where the latter court spoke as follows:

> "We therefore hold that a settlement may be enforced against an insurer in this situation only if it is reasonable in amount and entered into in good faith. The initial burden of going forward with proofs of these elements rests upon the insured and the ultimate burden of persuasion as to these elements is the responsibility of the insurer. This rule reasonably accommodates and compromises the competing interests of the parties and considerations of public policy. It will discourage collusive or overreaching impositions upon insurance carriers and, at the same time, will be conducive toward encouraging settlement and protecting an insured in its efforts amicably to resolve a claim against it after having been abandoned by its carrier."

*Griggs* at 174.

It would appear that the New Jersey Supreme Court in *Griggs* was concerned with an attempt to enforce a settlement agreement between an injured party and the tortfeasor, which resulted in a consent judgment against an insured.[5] That is not the present case. Dyer is not attempting to enforce a settlement agreement wherein the amount of damages was fixed by the parties and resulted in a consent judgment in that amount. Rather, Dyer is attempting to enforce a judgment entered by a district court in which the court, after trial, fixed damages in the amount of $1,066,484.00. In this latter regard, the Agreement between the parties in the present case specifically stated that the amount of damages was to be determined by the district court, which it was. We reject counsel's suggestion that *Glenn* permits an AG challenge to the reasonableness of the judgment entered in the underlying proceeding in the ensuing garnishment proceeding. AG lost its opportunity to challenge the judgment entered in the underlying proceeding, both as it relates to the court's finding of negligence and the amount of damages, when it failed to appear and defend Sports World in the underlying proceeding.

Other matters argued by AG for reversal were either not raised in the district court or are without merit. The principal issue in this appeal is whether AG in the garnishment proceeding may challenge the reasonableness of the district court's damage award. The district court concluded that, under Kansas law, AG did not have standing to so do. We

---

[5]The settlement agreement in *Griggs* provided that judgment in the amount of $9,000 would be entered in favor of the plaintiff.

are not inclined to disturb the district court's understanding of Kansas law.

AG also asserts that the district court erred in awarding Dyer attorney's fees incurred in the garnishment proceedings. From the record before us, it appears that the district court did not, and has not yet, fixed the amount of attorney's fees. Such being the case, that part of the district court's order awarding attorney's fees is not properly before us. *See Phelps v. Washburn Univ.,* 807 F.2d 153 (10th Cir. 1986*),* where we held that an award of attorney's fees without setting the amount of the fee is a non-final order and not appealable. *See also Aquinaga v. United Food and Commercial Workers Int'l.,* 993 F.2d 1480, 1481 (10th Cir. 1993).

Accordingly, that part of the district court's order and judgment entering summary judgment in favor of Dyer and against AG in the amount of $1,000,000.00 and interest thereon from the date of judgment in the underlying proceeding, is affirmed. However, AG's appeal, insofar as it relates to the district court's allowance of attorney's fees, is dismissed, there having been no order fixing the amount of attorney's fees.

ENTERED FOR THE COURT,


Robert H. McWilliams
Senior Circuit Judge