The Honorable Mark S. Gilstrap State Senator, 5th District 1813 North 79th Terrace Kansas City, Kansas 66112
Dear Senator Gilstrap:
As Senator for the 5th District you ask under what circumstances a doctor who provides abortion procedures is required to report rape and/or sexual abuse of a minor.
The Kansas Code for Care of Children[1] contains a "mandatory reporting" law that requires a wide variety of specified professionals to report to the Kansas Department of Social and Rehabilitation Services (SRS)[2] when such person "has reason to suspect that a child has beeninjured as a result of physical, mental or emotional abuse or neglect orsexual abuse."[3] The list of mandatory reporters includes persons licensed to practice the healing arts.[4] By definition, this would include doctors who perform abortions. The statute requires the report to "contain, if known, the names and addresses of the child and the child's parents or other persons responsible for the child's care, the child's age, the nature and extent of the child's injury (including any evidence of previous injuries) and any other information that the maker of the report believes might be helpful in establishing the cause of theinjuries and the identity of the persons responsible for theinjuries."[5] For purposes of the Kansas Code for Care of Children, "sexual abuse" means any act committed with a child that is described as a sex offense within the Kansas criminal code[6] as well as incest and aggravated incest.[7]
The issue of whether a mandatory reporter's duty to report is triggered by knowledge of the pregnancy of an unmarried girl under 16 years of age was previously posed to Attorney General Stephan as follows: "Since child abuse includes by definition the felony crime of indecent liberties, does this mean that all cases of pregnancy of unmarried children under sixteen years of age involve suspected injury or abuse as used in the [mandatory reporting] statute and therefore must be reported?" In response, Attorney General Opinion No. 92-48 focused on whether the condition of pregnancy itself should be considered to be an injury. The office concluded that pregnancy is not necessarily evidence of injury and therefore, reporting is not required without further evidence.
However, by focusing on the pregnancy of an unmarried girl under 16 years of age, the office failed to look at the State's clearly articulated position that the act of rape, whether forcible or "statutory," is an act that is inherently injurious and harmful.
Through the enactment of "statutory rape" laws, Kansas has long provided protection to unmarried underage girls from sexual intercourse.[8]
 "From the earliest times in this state the age limit stated in the statute defining statutory rape has been spoken of as the `age of consent.' Actually, however, the word `consent' does not appear in the statute. The real meaning of the statute is that whereas under some other statutes the state must prove the use of force or promise of marriage, the use of a drug or some other element, in a prosecution for a violation of G.S. 2935 21-424, all the state has to prove is fornication and that the female was under eighteen. That construction gave us the term `statutory rape.'"[9]
Currently, the following types of sexual intercourse with unmarried persons under the age of 16 years of age are sex offenses within the Kansas criminal code:
 Rape (forcible), defined generally as nonconsensual sexual intercourse.[10] This crime is classified as a severity level 2, person felony.
 Rape (commonly known as statutory rape), defined as sexual intercourse with a child who is under 14 years of age.[11] This crime is classified as a severity level 1, person felony.[12]
 Aggravated indecent liberties with a child (also known as statutory rape), defined in part as sexual intercourse with a child who is 14 or more years of age but less than 16 years of age. This crime is classified as a severity level 3, person felony.[13]
 Unlawful voluntary sexual relations (commonly known as the Romeo and Juliet law), defined as engaging in voluntary sexual intercourse with a child who is 14 years of age but less than 16 years of age and the offender is less than 19 years of age and less than four years of age older than the child and the child and the offender are the only parties involved and are members of the opposite sex. This crime is classified as a severity level 8, person felony.[14]
The outcome of any one of these kinds of unlawful sexual intercourse with a minor female,[15] whether voluntary or involuntary, could be an unwanted pregnancy for which an abortion is sought from a physician. Because sexual intercourse with any girl under the age of 16 is statutorily defined as "sexual abuse," as a matter of law sexual abuse has occurred. We also reach the conclusion that sexual abuse of a child is inherently injurious, thereby triggering the mandatory reporting requirement.
In a 1998 Kansas Court of Appeals case,[16] an insurer brought suit seeking declaratory judgment that its homeowners' and personal liability umbrella policies provided no coverage for claims arising from its insured's sexual molestation of a minor victim. The facts giving rise to this suit involved an adult male who molested a minor boy. The insurance policy covered damages for bodily injury caused by accident. The Court, in holding this was not an accident, followed the test set out in Bellv. Tilton:[17] an intent to injure can be inferred from the nature of the act and the foreseeability of harm flowing naturally from that act. "Knowingly molesting a child certainly meets this test."[18] In reaching this determination, the Kansas Court of Appeals relied heavily on Troy v. Allstate Insurance Company,[19] a case decided by the United States District Court for the District of Kansas.
Troy was also an insurance case in which suit was filed against an insured for damages allegedly resulting from the insured's sexual molestation of a child from age 7 to 14. The Court said:
 "This act, perpetrated by an adult upon a child, has been found by a majority of federal jurisdictions that have considered the issue to constitute intentional harm by its very nature. (Citations omitted.)
 "Common sense and legislative history lead this court to adopt the argument espoused by Allstate; that in the exceptional case of an act of child molestation, cause and effect cannot be separated, so that to do the act is necessarily to do the harm which is the consequence of the intended act. It is now a generally accepted conception that harm is inherent in the act of sexually abusing a child. (Citations omitted.) In fact, it is apparent that the Kansas Legislature has determined that harm from sexual offenses against children is inseparable from the performance of the act. That governing body has determined that indecent liberties with a child, K.S.A. 21-3503, aggravated criminal sodomy, K.S.A. 21-3506, and sexual exploitation of a child, K.S.A. 21-3516, constitute serious felonies merely upon proof that the acts occurred, irrespective of whether force was used, the child consented, or the resultant injuries were intended.
. . . .
 "The Kansas Supreme Court has not yet interpreted an intentional act exclusion and its application to child molestation. Nevertheless, this court concludes that the Kansas court would infer an intent to harm children when an adult intentionally commits an act of sexual abuse or molestation. . . . The very nature of the act compels the court to infer, as a matter of law, that Neal also intended to cause the inevitable harm which plaintiff now suffers. . . ."[20]
Cases from at least 42 states have unanimously held that sexual abuse of a child is so inherently injurious to the victim that harm, or intent to harm, is inferred as a matter of law.[21] Declarations from a sampling of these cases demonstrate the rationale of these courts' positions:
 "It is implicit in the logic of our criminal statutes that harm inheres in and flows from the proscribed behavior [i.e., sexual intercourse with minors].[22]
 "The courts following the majority approach have inferred the intent to cause injury as a matter of law in liability insurance cases involving alleged sexual misconduct against minors. These courts have found that the alleged sexual contact is so substantially certain to result in some injury, or so inherently injurious that the act is considered a criminal offense for which public policy precludes a claim of unintended consequences, that is, a claim that no harm was intended to result from the act.[23]
 "These courts reason that some harm is inherent in and inevitably results from such acts.[24]
 "In our view, these cases properly recognize the inevitability of emotional harm to minors from sexual abuse in all forms even if the abuse was not accomplished through violence or threats of violence. [25]
 "Further, the majority of courts have supported their adoption of the inferred intent rule by noting that the state's proscription of sexual contact between an adult and a minor is a clear indication that such contact is inherently injurious to the victim; that criminalization of such conduct additionally serves to place the insured on notice of the societal understanding that the harm from such conduct is inseparable from its performance; that the harm to the victimized child is no less serious when the abusive adult's subjective intentions are purportedly `benign'; . . .[26]
 "Sexual abuse of a minor is considered inherently harmful because the minor victim cannot fully appreciate the consequences of the activity and therefore lacks the ability to consent to it."[27]
Although these are insurance cases, we find the rationale to be persuasive and conclude that injury as a result of sexual abuse should be inferred as a matter of law whenever sexual intercourse, whether voluntary or involuntary, has occurred with a child under the age of 16. Because pregnancy clearly implies a prior act of sexual intercourse, a doctor who performs abortions would have a reason to suspect that any pregnant female under the age of 16 has been injured as a result of sexual abuse as a matter of law. In such circumstances the doctor has a mandatory duty to report this suspicion to the Department of Social and Rehabilitation Services.[28]
We note that the cases relied on each involved an adult perpetrator of sexual abuse against a minor victim. In this context, courts unanimously concluded that injury, or intent to injure, should be inferred as a matter of law. However, case authority is nearly evenly split when it comes to whether injury or intent to injure may be inferred when the perpetrator is also a minor.[29] Courts applying the inference of intent to minor insureds accused of sexually abusing other minors do so based on the rationale that the act of sexual abuse is inherently harmful. By contrast, other courts have found that, based on minors' relative lack of experience in sexual matters, it is improper to infer an intent to injure in cases where a minor sexually abuses another minor. The intent of the perpetrator, however, is irrelevant to the finding of an injury to the victim and therefore, the split of these authorities do not compel a different answer to your questions. Furthermore, proof of injury is not required under the mandatory reporting requirement. Onlyevidence of injury is required under the reporting requirement. The longstanding public policy of Kansas to protect children from such sexual exploitation is sufficient to infer evidence of injury when compelling evidence of sexual interaction is present.
In addition to the insurance cases that have determined sexual abuse to be injury, or intent to injure, as a matter of law, numerous cases have upheld statutory rape laws against an equal protection challenge. While this issue has never been presented to a Kansas appellate court, other state courts have found a basis for disparate gender-based treatment by examining the rationale for statutory rape laws. In doing so, courts have essentially equated sexual intercourse with a minor female to injury as a matter of law.[30] As expressed by the New York Supreme Court:
 "While we recognize that there are those in the protected class, particularly the older and more mature, who may be capable of engaging in sexual intercourse without suffering any adverse consequences, especially those resulting from pregnancy and physical injury, we are not convinced that any significant portion of the class as a whole is so emotionally and psychologically prepared that the protection should be lifted. Nor should the maturity of some deprive all of the others in the class of the protection of the law to which they are entitled. `The disabilities of infants are really privileges, for the object is to secure infants from damaging themselves by their own improvident acts.'
. . . .
 "Likewise, the statute here challenged serves a significant state interest, although many people, particularly those within the reach of its protection, may view it as an unwarranted infringement upon private life-styles. Social legislation hardly ever pleases everyone. We merely state that the justification of the statutory rape law rests not on a morality to which not all of our citizens may subscribe, but rather on the premise that physical and psychic injury can be the result when the members of the class sought to be protected engage in acts, the consequences of which they may neither perceive nor appreciate."[31]
The United States Supreme Court in Michael M. v. Superior Court of SonomaCounty[32] has also acknowledged the perils inherent in acts of sexual intercourse with girls under the age of 16. Commenting on California's "statutory rape" law, the Court stated that "the fact that the California Legislature criminalized the act of illicit sexual intercourse with a minor female is a sure indication of its intent or purpose to discourage that conduct"[33] due to its detrimental impact.[34]
The Kansas Supreme Court has also recognized the purpose of "statutory rape" laws to be "protecting juveniles from improvident acts."[35] The Kansas Legislature has determined that such improvident acts include sexual intercourse by minors under the age of 16, whether voluntary or involuntary. Such acts may thus reasonably be considered injurious as a matter of law. Consequently, a doctor called upon to perform an abortion for a girl under the age of 16 years is put on notice that, as a matter of law, an injury as a result of sexual abuse has occurred. Such doctor is obligated to report this injury to the proper authorities.
We are aware that although this opinion is limited to the question posed, the consequences of the conclusion reach further. Other situations that might trigger a mandated reporter's obligation, because sexual activity of a minor becomes known, include a teenage girl or boy who seeks medical attention for a sexually transmitted disease, a teenage girl who seeks medical attention for a pregnancy, or a teenage girl seeking birth control who discloses she has already been sexually active. Nevertheless, in reaching this conclusion we are mindful of and have followed a well-known and accepted tenet of law:
 "Courts do not write legislation. That is the function of the legislature. Our duty is to declare and apply legislative acts and to construe statutes and constitutions in accordance with the will of the law-making power where its construction becomes necessary. When such construction has been given to a law and finally established as a part thereof, it is as much a part of it as if embodied therein in plain and unmistakable language. When that situation exists, it is the province of the legislature alone to change the law if it deems advisable."[36]
Sincerely,
 PHILL KLINE Attorney General of Kansas
 Camille Nohe Assistant Attorney General
PK:JLM:CN:jm
[1] K.S.A. 38-1501 et seq.
[2] Reports of child abuse or neglect occurring in an institution operated by SRS or Juvenile Justice Authority are made to the Attorney General. Reports of child abuse or neglect committed by persons employed by or against children of persons employed by SRS or the Juvenile Justice Authority are made to a law enforcement agency. K.S.A. 38-1522(e).
[3] K.S.A. 2002 Supp. 38-1522 (emphasis added).
[4] Id.
[5] Id. (emphasis added).
[6] Article 35 of chapter 21 of the Kansas Statutes Annotated.
[7] K.S.A. 2002 Supp. 38-1502(c).
[8] See, i.e., State v. White, 44 Kan. 514, 25 P. 33.
[9] Wiebe v. Hudspeth, 163 Kan. 30, 34 (1947).
[10] K.S.A. 21-3502.
[11] Although willing participation by sexually sophisticated 14 year old is not a defense to statutory rape charge, it may be properly considered in imposing punishment. State v. Rush, 24 Kan. App. 2d 113
(1997).
[12] K.S.A. 21-3502.
[13] It is a defense to rape, as well as aggravated indecent liberties with a child, if the child was married to the accused at the time of the offense.
[14] K.S.A. 21-3522.
[15] We note that the additional crimes of (1) unlawful sexual relations, K.S.A. 21-3520 (defined in part as engaging in consensual sexual intercourse with a person who is not married to the offender if the offender is a teacher or a person in a position of authority and the person with whom the offender is engaging in consensual sexual intercourse is 16 or 17 years of age and a student enrolled at the school where the offender is employed, unless the offender is the parent of the student in which case provisions of the aggravated incest statute apply) and (2) aggravated incest, K.S.A. 32-3603 (defined in part as engaging in sexual intercourse with a person who is 16 or more years of age but under 18 years of age and who is known to the offender to be related to the offender by specified biological degrees). However, this opinion is limited to the specified offenses involving sexual intercourse with a female under the age of 16.
[16] State Farm Ins. Companies v. Gerrity, 25 Kan. App. 2d 643
(1998).
[17] 234 Kan. 461 (1983).
[18] Gerrity, supra at 647.
[19] 789 F. Supp. 1134 (D.Kan. 1992).
[20] Emphasis added.
[21] See Manufacturers and Merchants Mutual Ins. Co. v. Harvey,498 S.E.2d 222 (S.C. 1998) and cases cited therein.
[22] Allstate Insurance Co. v. Troelstrup, 789 P.2d 415, 419 (Colo. 1990).
[23] Whitt v. DeLeu, 707 F. Supp. 1011, 1015-16 (W.D.Wis. 1989).
[24] Altena v. United Fire and Casualty Co., 422 N.W.2d 485, 489 (Iowa 1988).
[25] Scudder v. Hanover Ins. Co., 559 N.E.2d 559, 563 (Ill. 1990).
[26] Wiley v. State Farm Fire Casualty Co., 995 F.2d 457,464 (3rd Cir. 1993)
[27] Allstate Ins. Co. v. Patterson, 904 F. Supp. 1270, 1282 (D.Utah 1995).
[28] For some situations, the report is made to the Attorney General or a law enforcement agency. See note 2, supra.
[29] See County Mutual Ins. Co. v. Hagan, 698 N.E.2d 271 (Ill. 1998) and cases cited therein.
[30] See State v. Brothers, 384 A.2d 402 (Del. 1978) and cases cited therein, and People v. Dozier, 72 A.2d 478 (N.Y. 1980) and cases cited therein.
[31] People v. Dozier, 72 A.2d 478, 483-484 (N.Y. 1980) (citations omitted).
[32] 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981).
[33] Id., 450 U.S. at 469, 101 S.Ct. at 1204.
[34] Id., 450 U.S. at 470-17, 101 S.Ct. at 1205. (See especially footnotes 3, 4 and 5 for empirical data supporting these statements of the Court).
[35] State ex rel. Hermesmann v. Seyer, 252 Kan. 646, 654 (1993).
[36] Appeal of Chief Industries, 255 Kan. 640, 648 (1994), citing Statev. One Bally Coney Island No. 21001 Gaming Table, 174 Kan. 757, 761
(1953).